## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KYLE B.,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

Civil Action No. 1:22-cv-05623

**OPINION**

**APPEARANCES**:

Daniel Ray Alvarez
SOUTH JERSEY LEGAL SERVICES, INC.
745 Market Street
Camden, NJ 08102

    *On behalf of Plaintiff.*

Melissa K. Curry
Special Assistant United States Attorney
C/O SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION,
OFFICE OF THE GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Kyle B.'s[1] appeal from a denial of Social

Security disability benefits by the Acting Commissioner of Social Security ("Defendant"). The

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Administrative Law Judge's ("ALJ") decision.

## I.   BACKGROUND

The Court recites herein only those facts necessary for its determination on this Appeal.

### A.  Administrative History

On September 27, 2019, Plaintiff filed an application for supplemental security income ("SSI"), alleging that he had been disabled since May 1, 2019. (AR 254–60). The application was denied initially on February 27, 2020, and upon reconsideration on June 24, 2020. (AR 32; AR 138–63). Thereafter, Plaintiff filed a written request for a hearing before an ALJ on June 25, 2020. (AR 32; AR 176–182). The ALJ held a hearing on December 2, 2020, at which Plaintiff, who was represented by counsel, testified, as did Plaintiff's mother and a vocational expert. (AR 32; AR 112–37). In a decision dated May 4, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 45). That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on July 22, 2022. (AR 17–23). Plaintiff timely filed this appeal on September 19, 2022, pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The matter is now ripe for disposition.

### B.  Plaintiff's Background and Testimony

At the alleged onset of disability, Plaintiff was forty-two years old. (AR 254). The highest-grade Plaintiff completed was ninth grade and he had not worked since 2008 when he stocked shelves at Kohl's. (AR 116, 118). Plaintiff is single and lives at home. (AR 255). Plaintiff testified that his father emotionally and physically abused him as a child. (AR 122, 127). As a result, Plaintiff said he had anger issues, was depressed, and had difficulty sleeping. (AR 121–24).

Plaintiff testified he struggled in his previous jobs stocking shelves and unloading trucks because he could not be around people given his anger issues. (AR 124).

Plaintiff's initial claim on September 27, 2019, cited the following illnesses, injuries, or conditions: post-traumatic stress disorder ("PTSD"), depression, anxiety, high blood pressure, and allergies. (AR 279–85).

### C. Medical History

Plaintiff began seeing medical professionals in 2019. The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

#### 1. Adam Bibas, LAC

On August 16, 2019, Plaintiff had his first intake appointment with Licensed Associate Counselor Adam Bibas. (AR 379). Plaintiff reported a history of emotional, physical, and psychological abuse by his father. (AR 379). Bibas reported that Plaintiff was fifteen minutes late to the appointment, had difficulty answering questions, and would "frequently jump from subject to subject." (AR 379). Bibas diagnosed Plaintiff with generalized anxiety disorder and major depressive disorder. (AR 386).

Plaintiff continued treatment with Bibas from August 2019 through March 2020, when the COVID-19 pandemic began. (AR 464). During the second intake appointment on June 16, 2020, Bibas opined that Plaintiff met the criteria for PTSD and had a below average intelligence level. (AR 463–64).

Bibas ultimately opined that Plaintiff was unable to meet competitive standards, i.e. having noticeable difficulty sixteen to twenty-five percent of the work day or work week, in the following areas, among others: (1) remembering work-like procedures; (2) understanding and remembering very short and simple instructions; (3) maintaining attention for two hour segments; (4) sustaining

an ordinary routine without special supervision; (5) working in coordination with or proximity to others without being unduly distracted; (6) making simple work-related decisions; and (7) asking simple questions or requesting assistance. (AR 515). Bibas also opined that Plaintiff "does not possess the mental stability or emotional regulation skills to handle work-related stress." (AR 517). Bibas concluded that Plaintiff's symptoms are "severe enough that he will not be able to attend a regular work schedule." (AR 517).

2. <u>Isiaka A. Bolarinwa, M.D.</u>

Dr. Bolarinwa, a Board-Certified Psychiatrist, evaluated Plaintiff on January 22, 2020. (AR 540). Plaintiff reported a long history of mental and emotional difficulties. (AR 540). Other than Plaintiff's depressed mood and thoughts, Dr. Bolarinwa observed Plaintiff had a normal appearance, eye contact, speech, judgment, and average intelligence. (AR 541). Dr. Bolarinwa diagnosed Plaintiff with major depressive disorder, PTSD, generalized anxiety disorder, and insomnia. (AR 541). She instructed Plaintiff to increase his Lexapro dose and continue therapy. (AR 542). Plaintiff did not continue treatment with Dr. Bolarinwa. (AR 224).

3. <u>Greg Taylor, D.O.</u>

On October 28, 2019, Dr. Taylor, Plaintiff's primary care physician, examined Plaintiff. (AR 391). Dr. Taylor found that Plaintiff appeared anxious, hyperactive, and with a depressed mood. (AR 392). Yet, Dr. Taylor noted that Plaintiff had improved on Lexapro. (AR 392).

On February 10, 2020, Dr. Taylor saw Plaintiff due to complaints of an earache. (AR 414). During this visit, Dr. Taylor noted that Plaintiff was "positive for dysphoric mood" as he was nervous and anxious. (AR 415). In addition to the Lexapro, Dr. Taylor prescribed BuSpar. (AR 417). On April 20, 2020, after observing Plaintiff once again appearing nervous and anxious, Dr.

Taylor prescribed Zoloft for Plaintiff's anxiety. (AR 457). Dr. Taylor increased Plaintiff's dose of Zoloft on May 4, 2020. (AR 461).

    4.  <u>Lewis Lazarus, Ph.D.</u>

On January 31, 2020, Dr. Lazarus, Clinical Neuropsychologist and Licensed Psychologist, conducted a consultive examination of Plaintiff. (AR 450). Plaintiff reported feeling "miserable," dysphoric, and sad nearly every day. (AR 451). He noted feeling hopelessness, worthlessness, and fatigue. (AR 451). He also reported difficulty learning new information and concentrating. (AR 451).

Dr. Lazarus observed that Plaintiff's affect was "dysphoric, depressed, apathetic, and also at times irritated and hostile." (AR 451). He also noted that Plaintiff's attention and concentration was "quite significantly limited" due, in part, to his "limited intellectual functioning." (AR 451).

Dr. Lazarus diagnosed Plaintiff with major depressive disorder with anxious features. (AR 451). He recommended "psychiatric intervention for appropriate medication management of [Plaintiff's] symptoms." (AR 452). Dr. Lazarus also recommended psychological counseling to process "his dysfunctional early developmental years in which there was allegedly abuse including neglect." (AR 452). Finally, Dr. Lazarus recommended vocational assessment and rehabilitation given his limited intellectual functioning and interpersonal difficulties. (AR 452).

## II.   <u>LEGAL STANDARD</u>

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42

U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (internal citations and quotations omitted).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.").

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K. on behalf of K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp.

277, 284 (D.N.J. 1997) (internal citations and quotations omitted)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)).

### B. Sequential Evaluation Process

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most he can still do despite [her] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.

> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original; citations and footnote omitted).

### III.   __ALJ DECISION__

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 27, 2019, the application date. (AR 35). At Step Two, the ALJ found that Plaintiff suffered from the following medically determinable severe impairments: "depression; post-traumatic stress disorder (PTSD); and anxiety." (AR 35). The ALJ found that Plaintiff had non-severe impairments, namely obesity, hypertension, left ear hearing loss, and an unspecified learning disorder. (AR 35). The ALJ found that these non-severe impairments either did not require treatment or had been treated successfully. (AR 35).

At Step Three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. (AR 25). Specifically, Plaintiff did not meet the requirements for Listing 12.11, neurodevelopment disorders, due to insufficient medical documentation of his alleged cognitive deficiencies. (AR 36). The ALJ additionally found that Plaintiff had not met the requirements of Listings 12.04, 12.06, or 12.08, due to not meeting the criteria set out in Paragraph B of each of those listings. (AR 36). To meet the Paragraph B criteria, Plaintiff would need to show that he had either an extreme limitation in at least one of the four categories, or a marked limitation in at least two of the categories. (AR 36). The ALJ found that Plaintiff experienced only mild or moderate limitations in each of these categories, and therefore did not meet the requirements of Paragraph B. (AR 36–37). The ALJ also

concluded that Plaintiff had not met the Paragraph C criteria of Listings 12.04 and 12.06 based on the available evidence. (AR 37).

At Step Four, the ALJ found that Plaintiff had the RFC to perform work at a full range of exertional levels, subject to various non-exertional limitations. (AR 38). The ALJ also found, based on the testimony of the vocational expert, that this RFC did not permit the performance of Plaintiff's past relevant work as a stock clerk. (AR 43).

At Step Five, the ALJ, relying on the testimony of the vocational expert, found that a significant number of jobs—i.e., approximately 136,000 jobs as a packer and approximately 212,000 jobs as an assembler—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile. (AR 43-44). The vocational expert however noted that these numbers should be reduced by 50% to take into account Plaintiff's limited ability to interact with others. (AR 44). The ALJ determined this testimony to be consistent with the information contained in the Dictionary of Occupational Titles. (AR 44). The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 44).

## IV.   **DISCUSSION**

In his appeal, Plaintiff identifies three specific alleged errors within the ALJ's decision. The Court will address each of these arguments in turn. For the reasons that follow, the Court affirms the ALJ's decision.

First, Plaintiff maintains that the ALJ's assessment of Plaintiff's RFC is not based on substantial evidence because she misread treatment records, mischaracterized the medical opinion, and ignored objective evidence. (Pla. Br., ECF No. 9 at 14). Specifically, Plaintiff argues that the ALJ erred in finding that Mr. Bibas's opinion was not consistent with treatment records. (Pla. Br., ECF No. 9 at 17).

Plaintiff next argues that the ALJ abused her discretion when she denied Plaintiff's request for a consultative exam with IQ testing. (Pla. Br., ECF No. 9 at 29). Lastly, Plaintiff maintains that the ALJ's decision is not based on substantial evidence because the ALJ failed to consider how Plaintiff's aggressive demeanor and use of profanity throughout the hearing limited his ability to interact appropriately with supervisors. (Pla. Br., ECF No. 9 at 34).

Plaintiff asks that the decision of the Commissioner be reversed and that the Court enter a finding that he is disabled and eligible for Title XVI benefits. (Pla. Br., ECF No. 9 at 39). In the alternative, Plaintiff requests a remand for a new hearing with corrective instructions and findings. (Pla. Br., ECF No. 9 at 39–40). The Commissioner maintains that the ALJ's decision should be affirmed in its entirety because it is supported by substantial evidence. (Def. Br., ECF No. 10).

## A.  Whether the ALJ Assessment of Plaintiff's Residual Functional Capacity is Based on Substantial Evidence.

Plaintiff maintains that the ALJ's assessment of Plaintiff's RFC is not based on substantial evidence for four reasons: (1) the ALJ erroneously concluded that Plaintiff had a positive response to treatment when his treatment records state otherwise; (2) the ALJ mischaracterized Mr. Bibas's assessment of Plaintiff's intellectual functioning and how it related to his inability to carry out tasks; (3) the ALJ mischaracterized Mr. Bibas's medical opinion by finding that Plaintiff could perform simple work; and (4) the ALJ "cherry picked" facts from Dr. Lazarus and ignored portions that were consistent with Mr. Bibas's medical opinion. (Pla. Br., ECF No. 9 at 26). The Court finds all four arguments unpersuasive and will address each in turn.

At Step Four, the ALJ assesses the claimant's RFC and whether he can perform his "past relevant work." *Hess*, 931 F.3d at 201–02. If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to Step Five.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations. 20

10

C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the ALJ is tasked with determining the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). In determining an individual's RFC in Step Four, the ALJ must consider all relevant evidence—including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Halter*, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. § 404.1545(a)).

While the ALJ has a duty to consider all the evidence; the ALJ need include only "credibly established" limitations. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record;" however, "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason").

The ALJ has significant discretion in choosing whom to credit. *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (citation omitted) ("[T]he ALJ is entitled to weigh all evidence in making its finding . . . [and] is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences."). 20 C.F.R. §§ 404.1520(c)(1–5) and 416.927(c)(1–6) provide a list of factors to consider in determining the weight afforded to opinions, including (1) supportability of the opinion afforded by the medical evidence, (2) consistency of the opinion with the record as a whole, (3) nature and extent of the treatment relationships, and (4) specialization of the treating physician, among other factors. *Annette S. v.*

11

*Comm'r of Soc. Sec.*, No. 21-10614, 2022 WL 2304771, at *7 (D.N.J. June 27, 2022). The ALJ must not "explicitly discuss each factor in [her] decision." *Samah v. Comm'r of Soc. Sec.*, No. 17-08592, 2018 WL 6178862, at *5 (D.N.J. Nov. 27, 2018). Rather, the ALJ only needs to "articulate some level of analysis of a particular line of evidence." *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004)

In using medical opinions to determine an individual's RFC, the regulations require an ALJ to consider the opinion's persuasiveness. 20 C.F.R. § 404.1520c(a). The two most important factors in doing so are supportability and consistency, and failure to thoroughly evaluate these factors is error. *Andrews v. Kijakazi*, No. 20-1878, 2022 WL 617118, at *21–22 (M.D. Pa. Mar. 2, 2022). The supportability of the opinion describes the "extent to which a medical source has articulated support for the medical source's own opinion." *Cota v. Kijakazi*, No. 21-672, 2022 WL 3686593, at *7 (M.D. Pa. Aug. 25, 2022) (citation omitted). Consistency compares the medical opinion with other medical opinions in the record as well as the relevant evidence in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2); *Phillips.*, 91 F. App'x at 780.

Further, the ALJ will "not defer or give a specific evidentiary weight, including controlling weight, to any medical opinions . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead of assigning weight to medical opinions, under the updated regulations, the ALJ simply considers the persuasiveness of medical opinions. *Id.*

Here, the ALJ found Plaintiff to have the RFC to,

perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant retains the ability to carry out simple routine tasks on continuous basis with simple instructions and simple work-related decisions. No assembly line or production rate pace work. Occasional interaction

with co-workers, supervisors and public, no constant interaction with public in a
customer service setting; and must work in a low stress work environment.

(AR 38).  In reaching this finding, the ALJ did not find the assessment from Mr. Bibas persuasive
to the extent he found extreme limitations as the ALJ determined that this was inconsistent with
the overall record. (AR 40).

As noted above, when faced with conflicting opinion evidence, an ALJ has significant
discretion in choosing whom to credit. *Brown*, 649 F.3d at 196 ("[T]he ALJ is entitled to weigh
all evidence in making its finding  . . . [and] is not bound to accept the opinion or theory of any
medical expert, but may weigh the medical evidence and draw its own inferences.") (citation
omitted). In general, ALJ should accord great weight to treating physicians' reports, especially
"when their opinions reflect expert judgment based on a continuing observation of the patient's
condition over a prolonged period of time." *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987);
20 C.F.R. § 404.1527(d)(2). "An ALJ may reject a treating physician's opinion outright only on
the basis of contradictory medical evidence, but may afford a treating physician's opinion more or
less weight depending upon the extent to which supporting explanations are provided." *Plummer
v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir.
1985)).

Here, the ALJ specifically noted that Mr. Bibas's opinion did not consider that Plaintiff
*had* historically been able to obtain and maintain stock clerk positions for different companies.
(AR 40). Additionally, the ALJ noted that "despite some limitation, [Plaintiff] is able to interact
with others on a superficial level, shop in stores, and comprehend information." (AR 42). She also
noted that Mr. Bibas's opinion that Plaintiff has difficulty carrying out "detailed instructions" does
not preclude him from "carrying out at least simple instructions." (AR 42). The ALJ also
considered Dr. Lazarus's observation that Plaintiff was "cooperative, alert and oriented, and

deemed his social skills adequate." (AR 42). Additionally, the ALJ considered that Dr. Lazarus had noted that Plaintiff's "thought processes were coherent and goal directed, and that his memory skills were intact, though [Plaintiff's] attention and concentration were limited and problems were noted with his insight and judgment." (AR 42).

Based on this, the ALJ concluded that Mr. Bibas's "opinion of marked or extreme mental limitation is not persuasive, as it is not supported by other objective medical evidence in the file nor the claimant's reported activities of daily living. . . ." (AR 42).  Yet, the ALJ did credit Mr. Bibas's opinion that Plaintiff had "moderate limitation in persisting and maintaining pace" as this was "supported by the objective medical evidence and consistent with the decision herein." (AR 42). This shows that the ALJ carefully considered Mr. Bibas's opinions as a whole and chose to credit some of them and not others based upon the ALJ's review of the record and other medical opinions. In doing so, the ALJ properly outlined the evidence on which she relied upon in reaching this determination.

Additionally, Plaintiff's contention that the ALJ misinterpreted a graph in Mr. Bibas's records does not call into question the ALJ's ultimate finding. While the ALJ does in fact appear to have misinterpreted a graph in Mr. Bibas's records, the ALJ relied on other evidence to reach her ultimate conclusion as outlined above. Indeed, the ALJ's conclusion regarding Mr. Bibas's opinion regarding extreme limitations was not just supported by the ALJ's misinterpretation of the graph; it was supported by other specific evidence in the record. Thus, it is not sufficient to undermine the overall conclusion of the ALJ.

And even if the interpretation of the graph was an error, it does not require remand. At the first four steps, "[p]laintiff . . . bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful." *Hill v. Comm'r of Soc. Sec.*, No. 19-

14

20115, 2020 WL 7694007, at *2 (D.N.J. Dec. 24, 2020). Where corrected error does not change the outcome, the error is harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016). Despite the misinterpretation of the graph, there is more than sufficient evidence to support the ALJ's decision to deem Dr. Bibas's opinion regarding extreme limitations inconsistent with the evidence. As such, to the extent that the ALJ misinterpreted the graph, the ALJ's error is harmless.

Plaintiff also contends that the ALJ mischaracterized Mr. Bibas's assessment of Plaintiff's intellectual functioning and his ability to carry out tasks. (Pla. Br., ECF No. 9 at 19). Specifically, Plaintiff maintains that the ALJ incorrectly stated that Mr. Bibas's report "indicates that the specific symptoms that affect his ability to focus and carry out a task do not reflect a lack of intellectual functioning or borderline intellectual functioning" when Mr. Bibas did notate some learning issues. (AR 40). In so arguing, Plaintiff relies on *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008), which, as Defendant notes, interpreted the former medical evidence regulations. *See Michelle M. v. Comm'r of Soc. Sec.*, No. 21-14624, 2023 WL 6140658, at *6 (D.N.J. Sept. 19, 2023) (internal quotation marks and citations omitted) ("For claims filed before March 27, 2017, a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."). In *Brownawell*, Third Circuit determined that the ALJ's disability determination was not supported by substantial evidence. *Id.* at 355. The Court concluded that the ALJ relied on clearly erroneous facts in making a decision that failed to give appropriate weight to the treating physician and improperly favored the opinion of the non-examining psychologist. *Id.* However, that standard no longer applies.

Regarding Plaintiff's intellectual functioning, the ALJ here found:

The record contains a mental residual functional assessment report from a psychotherapist Adam Bibas, M.Ed, LAC, NCC, dated November 25, 2020 (Exhibit 8F). In this report, Provider Bibas indicates the claimant has difficulty carrying out and remembering more detailed instructions. Provider Bibas also indicates the claimant lacks the ability to remember work like procedures has he has learning and comprehension issues. In addition, he notes the claimant has difficulty handling stressing and coping in stressful situations. It appears the claimant's most notable deficits, based on Provider Bibas' assessment relates to his ability to interact with others and maintain socially appropriate behavior. He indicates the claimant's paranoia associated with his PTSD, anxiety and increased anger and agitation inhibit his ability to interact with others (Exhibits 8F/2, 3, 6). In fact, the report further indicates that the specific symptoms that affect his ability to focus and carry out a task do not reflect a lack of intellectual functioning or borderline intellectual functioning. The report does not mention the fact that the claimant was able to obtain and maintain stock clerk positions for more than a few corporations. Nevertheless, the limitations to interacting with others, concentration and focusing difficulties and PTSD symptoms, including the inability to handle stress in the work environment are accommodated in the RFC. This report is inconsistent with the treatment records that reflect a 125% improvement in his symptoms with treatment, his mother's testimony that there is improvement in his symptoms when he is compliant with his medications and the totality of the other evidence that does not provide more persuasiveness for this opinion.

To the extent that the ALJ mischaracterized, or understated, Mr. Bibas's opinion regarding Plaintiff's learning issues, the ALJ noted that Plaintiff's limitations, *including his intellectual deficits*, were accommodated for in his RFC. Indeed, the ALJ had found that Plaintiff "has some difficulty comprehending and intellectual deficits that would make it difficult for him to complete more complex tasks or make decisions in a work environment." (AR 39). Though the ALJ acknowledged Plaintiff's inability to complete complex tasks, the ALJ found this did not preclude Plaintiff from completing simple tasks. (AR 41).  Additionally, the ALJ found that the portion Mr. Bibas's report discussing the severity of Plaintiff's limitations was inconsistent with the overall record as Plaintiff had performed semi-skilled work in the past. As noted, though Mr. Bibas was Plaintiff's treating physician, albeit for a very short period of time before Plaintiff filed his application, the ALJ may afford less weight to this opinion as long as a supporting explanation is

16

provided. Here, putting aside the mischaracterizations in the ALJ's decision, the ALJ provided additional reasons for reaching her finding regarding Plaintiff's limitation, including the other medical evidence in the record and even Plaintiff's mother's testimony. This evidence includes mental status reports from Jefferson Health Primary Care in which the providers found that Plaintiff had normal judgment and a mental status examination in which Dr. Lazarus "estimated" that the Plaintiff was functioning in a borderline range with a limited fund of knowledge. (AR 39). Thus, the ALJ's ultimate determination is supported by and consistent with the overall record.

Plaintiff next argues that the ALJ erred in finding that Plaintiff could carry out simple instructions. (Pla. Br., ECF No. 9 at 24). Specifically, Plaintiff points to Mr. Bibas's opinion that he is unable to perform simple instructions sixteen to twenty-five percent of the time. (Pla. Br., ECF No. 9 at 24). Plaintiff argues that this coupled with the vocational expert's testimony that being distracted from completing simple instructions more than ten percent of the time would preclude Plaintiff from meeting the demands of simple unskilled work was error. (Pla. Br., ECF No. 9 at 24). Yet, as noted, the ALJ supported her finding that Plaintiff could perform simple tasks and instructions with ample evidence in the record. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019) ("[A]s long as the ALJ offers a valid explanation, a simple tasks limitation is permitted after a finding that a claimant has moderate difficulties in concentration, persistence, or pace.") (internal quotation marks and citations omitted). Though, Mr. Bibas noted a more significant limitation, the ALJ took into account other medical evidence in addition to the fact that Plaintiff did indeed have prior work experience. Plaintiff may disagree with the conclusion the ALJ reached, but the ALJ's decision and stated reasons therefore belies his complaint that his limitations were not fully considered.

Lastly, Plaintiff's argument that the ALJ "cherry-picked" evidence is without merit. (Pla. Br., ECF No. 9 at 26). Here, the ALJ certainly considered Plaintiff's limitations as noted in detail above in determining his RFC. Indeed, the ALJ even found that Plaintiff would be unable to perform his past relevant work as a stock clerk given Plaintiff's limitations interacting with people and his need to work in a low stress environment. (AR 43). Ultimately, the ALJ found, based on the vocational expert's testimony, that Plaintiff could perform work as a packer and even reduced the available jobs by half based on Plaintiff's limitations. (AR 43). To the extent that the ALJ mischaracterized some medical findings, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (internal citation omitted). Indeed, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). And here, the Court will not reweigh the evidence as there was substantial evidence to support the ALJ's decision.

**B.  Whether the ALJ Acted in her Discretion in Not Ordering IQ Testing.**

Plaintiff further argues that the ALJ abused her discretion in not ordering IQ testing. (Pla. Br., ECF No. 9 at 29). The Court disagrees.

"The decision to purchase a consultative examination will be made on an individual case basis in accordance with the provisions of § 416.919a through § 416.919f." 20 C.F.R. § 416.919a (a). § 416.919a (b) provides that "we may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim." Indeed, the decision to order a consultative examination is within the discretion of the ALJ. *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002).

Here, the ALJ properly exercised her discretion and concluded that she had sufficient information to assess Plaintiff's limitations without an IQ test. (AR 33). Indeed, the ALJ noted that:

> the evidence does not support that the claimant's alleged lack of intellectual functioning is a severe impairment to warrant any IQ testing in light of the other evidence outside of Dr. Lazarus' one time examination. In fact, Dr. Lazarus is the only medical professional that diagnosed an "unspecified learning disorder" and none of the claimant's treatment providers diagnosed him with this condition. In fact, Dr. Lazarus indicated that the claimant was "estimated" to be functioning in the borderline range, when his report and the other evidence outside of his report does not support this estimation. As will be discussed below, the diagnosis is vague in light of the totality of the other evidence outside of this one time examination. Furthermore, the request for the IQ testing based on the Total Family Solutions records and the indication that he lacks life skills and below average intelligence does not support the request for a consultative examination with IQ testing. In addition, this provider never diagnosed the claimant with a learning disorder after treatment of the claimant on a limited basis for less than two years. Therefore, the request for a consultative examination with IQ testing is denied, as there is sufficient evidence in the record to make a determination.

(AR 33).

In *Ribaudo v. Saul*, the Court noted that the ALJ had specifically considered "that Plaintiff was able to independently manage his personal care . . . that he had only mild restrictions in his activities of daily living and social functioning . . . and that his previous work has included some semi-skilled work reflecting a higher mental capacity than accorded in the ALJ's RFC determination." No. 17-7207, 2020 WL 5088635, at *14 (D.N.J. Aug. 28, 2020). Based on these circumstances, which were in addition to the plaintiff's failure to request an IQ test, "the Court [could not] conclude that the ALJ erred in failing to order additional IQ testing." *Id.*; *see also Gist v. Barnhart*, 67 F. App'x 78, 82 (3d Cir. 2003) (rejecting the plaintiff's argument that additional intellectual function testing was warranted since it is only required "where the medical evidence suggests that a finding of medical equivalence to a listing is reasonable"). Like *Ribaudo*, the ALJ also noted that there was evidence in the record that Plaintiff was independently able to manage

his personal care, (AR 41), that he can shop independently, (AR 37), and that he had held previous jobs as a stocking clerk. (AR 42). Additionally, Plaintiff has not shown that the IQ testing would have altered the outcome of his disability claim. *See Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 270 (D.N.J. 2022) ("As to Dr. Lazarus' finding that a vocational assessment of Plaintiff's disability claim may prove to be somewhat difficult and that Plaintiff was functioning with a borderline-to-low general fund of knowledge, Plaintiff presents no argument as to how the ALJ's consideration of such findings would have altered the outcome of Plaintiff's disability claim."). As such, like *Ribaudo*, this Court, too, cannot conclude that the ALJ abused her discretion in failing to order IQ testing.

### C. Whether Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Ability to Interact with Others.

Plaintiff argues that the ALJ erred in determining his RFC by failing to consider his aggressive demeanor and use of profanity during the hearing. (Pla. Br., ECF No. 9 at 34). The Court disagrees.

As Plaintiff himself notes, an ALJ may not substitute her own "personal reaction to a Claimant's responses or physical appearance for the opinion of the treating physician." *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986). As for credibility determinations, "the Third Circuit has instructed that it 'ordinarily defer[s] to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor.'" *Torres v. Comm'r of Soc. Sec.*, No. 17-00843, 2018 WL 1251630, at *8 (D.N.J. Mar. 12, 2018) (quoting *Coleman v. Comm'n of Social Sec.*, 494 F. App'x. 252, 254 (3d Cir. 2012)). As such, an ALJ's personal reactions as to Plaintiff's appearance and demeanor is only appropriate if the observation is only a factor in a comprehensive examination of the evidence in the record. *Id.*

Here, as discussed, the ALJ's ultimate determination is supported by substantial evidence in the record though the ALJ did not specifically note Plaintiff's demeanor as a factor in the decision. In the decision, the ALJ did specifically mention certain portions of Plaintiff's testimony at the hearing, noted Dr. Lazarus's observation that during the examination Plaintiff was at times irritated and hostile, and noted Mr. Bibas's opinion regarding Plaintiff's anger issues. Indeed, the ALJ found, based on the record, that Plaintiff was unable to perform his past relevant work given his limitations in interacting with others in a customer service setting. (AR 43). And the ALJ took this limitation into account when determining Plaintiff's RFC. The ALJ found, based on the evidence, that "as reports document difficulty in the claimant's ability to interact with others, he is limited to occasional interaction with co-workers, supervisors and public, no constant interaction with public in a customer service setting." (AR 41). As such, the ALJ did consider Plaintiff's mental impairments but, ultimately, based on substantial evidence, concluded that they were severe but not work preclusive. (AR 39). That the ALJ did not specifically account for Plaintiff's demeanor at the hearing in making her determination is not error. Here, the ALJ's decision was based on substantial evidence.

## **CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner. An appropriate Order will follow.

 _/s/ Christine P. O'Hearn_____
**CHRISTINE P. O'HEARN**
**United States District Judge**